## G. A. STOWERS FURNITURE CO. v. AMERICAN INDEMNITY CO. (No. 1021–4915.)

Commission of Appeals of Texas, Section A. March 27, 1929.

Atkinson & Atkinson and Fulbright, Crooker & Freeman, all of Houston, for plaintiff in error.

Fouts, Amerman, Patterson & Moore, of Houston, for defendant in error.

CRITZ, J. This case involves issues that are questions of first impression in this court, and are so important to the jurisprudence of this state that we deem it advisable to make a very full and complete statement of the issues involved.

This suit was originally filed by the G. A. Stowers Furniture Company, plaintiff in error, hereinafter styled plaintiff, against American Indemnity Company, defendant in error, hereinafter styled defendant, for $14,103.15, together with interest, and for cause of action the petition states, in substance:

That defendant was a private corporation in the city of Galveston, and was engaged during the years 1919 and 1920 in the business of writing and issuing insurance policies and bonds to indemnify the assured against loss by reason of liability imposed by law upon the assured for injuries on account of bodily injuries, etc., and that the said indemnity company issued to said Stowers Furniture Company a policy of insurance for the sum of $5,000 which proposed to indemnify the said furniture company against loss by reason of injuries accidentally suffered by any person or persons if such loss or damage so sustained was by reason of the said furniture company's ownership of the automobiles described in said policy.

It was further charged that defendant, indemnity company, agreed in said policy, and had reserved the right, to defend any suit in the name and behalf of said named assured for such damage or loss sustained if same was by reason of said plaintiff's ownership.

It was further provided that the furniture company should immediately, in the case of an accident, give notice to defendant, indemnity company, at Galveston and should forward to said indemnity company any summons or other process served upon them, and, when requested by said company, the assured should aid in effecting settlement, etc.

It was further stipulated in said policy that the assured, meaning said furniture company, should not voluntarily assume any liability, settle any claim or expense, except at its own cost, and should not engage in any negotiations of such settlement or legal proceedings without the consent of said insurance company, and the said insurance company reserved the right to settle any and all claims or suits brought against the plaintiff.

It was further alleged that the premiums were all paid on said policy, and the same was valid and subsisting and in full force and ef-

feet, that said policy had been mislaid, and that proof would be offered of its contents.

It was further charged in said petition that on the 23d day of January, 1920, a truck belonging to said furniture company, and covered by said policy of insurance, which was hauling and delivering furniture and being operated by one of the said furniture company's servants, and was being driven on Austin street in the city of Houston, Tex., at about the hour of 7 p. m., came in contact with a wagon standing on the side of Austin street and was thereby disabled and so crippled that said servant could not longer operate it, and that it was left by the servant of said furniture company, without a light and without any one to watch it, and that shortly thereafter Miss Mamie Bichon, who was an employee in a drug store, left for her home at about 8:30 p. m. and was driven by Jamail in a Ford coupé very rapidly along said street, and came in collision with said truck; that the coupé was turned over, and that she was very seriously injured; and that about the 3d day of March, 1920, the said Miss Bichon brought suit for damages against said Stowers Furniture Company for $20,000..

It was further charged that defendant herein took charge of the defense of said suit for this plaintiff in accordance with the terms of said policy.

It was further charged that defendant herein employed counsel and proceeded to trial in said cause of Miss Bichon against the plaintiff, furniture company, and that, after hearing the evidence and the charge of the court, the jury returned a verdict for Miss Bichon for the sum of $12,207 besides cost; that there was an appeal by the defendant herein from said judgment; that the same was affirmed; and that this plaintiff paid to Miss Bichon the sum of $14,107.15, including interest and costs of court.

It was further charged that during the pendency of this suit, and before the trial, Miss Bichon offered to accept $4,000 in full settlement for the damages due her; that defendant herein refused to pay more than $2,500, although its policy bound it to pay $5,000; that the defendant herein knew that the case which Miss Bichon had against this plaintiff was a very dangerous one, and that she was likely to get a judgment for far more than $5,000, and that a person of ordinary prudence would have settled said cause for said sum of $4,000; that defendant admitted that said offer of settlement was a good one and should be accepted; that it willfully and negligently refused to make such settlement, knowing at the time it did so that it was jeopardizing the interests of this plaintiff in a very large amount; that, in refusing to make such settlement, it did not act in good faith, and it did not act like a prudent person would have done under like circumstances; and that by reason of such conduct of said indemnity company the furniture company had been compelled to pay the said sum of more than $14,000.

The material portion of the defendant's answer as shown in the opinion of the Court of Civil Appeals, is as follows:

"That after the happening of the said accident made the basis of this suit the defendant investigated it, and after suit was filed and after citation was forwarded to it by plaintiff herein, it made defense of said suit and defended it through all the courts. That under the terms and provisions of said contract it was to have control of the defense of said suit and no settlement was to be made without its consent, it having the option of settling or defending the suit as it might deem best, and it was under no duty to settle said suit, and it elected to and did defend the said suit. That after making investigation in reference to said accident and the extent of the injuries suffered by Mamie Bichon, this defendant reached the conclusion that the facts of the accident were of such nature that it could and did reasonably suppose that judgment would ultimately result in a verdict for the defendant, and that the injuries suffered by Mamie Bichon as a result of the accident were not of a permanent nature or of such seriousness as to justify a settlement of this case for $4,000. * * *

"For further and special answer herein, defendant says that by the terms of said contract of indemnity its liability was limited, as hereinbefore alleged, to $5,000, with interest thereon at 6 per cent. from the date of the judgment to the affirmance thereof. This defendant says that it has already carried out the terms and provisions of said contract except the payment of $5,000 and interest thereon, which immediately upon the affirmance of this case by the Supreme Court was tendered to the plaintiff herein and plaintiff was notified that defendant was ready and willing to pay the same, but was notified by the plaintiff that plaintiff would not release this defendant from liability, which it was entitled to be released from if it complied with its contract, and stated it was useless to tender the actual money because plaintiff would not accept it; that this defendant has always been ready and willing to pay the limit of its liability, to wit, $5,000, with interest at 6 per cent. until plaintiff's notice it would not be accepted, and is now ready and willing to pay the same, which amount next above mentioned represents principal of $5,000 interest thereon to the date of the notification that tender would not be effective, together with court costs, which are also tendered, which notification to the plaintiff and the understanding that a complete release from liability would not be effected was within ten days of the affirmance of said case by the Supreme Court."

The policy mentioned in the petition contains, among others, the following provision:

"American Indemnity Company

"Home Office: Galveston, Texas.

"In consideration of the premium of this Policy, as expressed in Statement 5, and of the other statements which are set forth in the Schedule of Statements herein made, and which the Assured warrants to be true by the acceptance of this Policy, and also subject to the conditions of this Policy as hereinafter set forth:

"Does hereby agree

"To indemnify the Assured named and described in Statement 1 of the Schedule of Statements forming part hereof:

"Against loss by reason of the liability imposed by law upon the Assured for damages on account of bodily injuries, including death at any time resulting therefrom, accidentally suffered or alleged to have been suffered while this Policy is in force by any person or persons except employes of the Assured while engaged in operating, riding in or on, or caring for automobiles covered hereby.

   \*     \*     \*     \*     \*     \*

"And in addition the company agrees:

"(A) To defend in the name and on behalf of the Assured any suits even if groundless, brought against the Assured to recover damages on account of such happenings as are provided for by the terms of the preceding paragraphs.

"(B) To pay irrespective of the limits of liability expressed in Condition 8 (Limits) hereof, all costs taxed against the Assured in any legal proceeding defended by the Company, all interest accruing after entry of judgment upon such part thereof as shall not be in excess of said liability and the expense incurred by the Assured for such immediate medical or surgical relief as is imperative at the time of the accident, together with all the expense incurred by the Company growing out of the investigation of such an accident, the adjustment of any claim or the defense of any suit resulting therefrom."

The policy further provides:

"This policy does not cover Injuries and/or Death, or Loss, Damage and/or Expense:

   \*     \*     \*     \*     \*     \*

"Assumed by the Assured under any Contract or Agreement, oral or written."

The policy further provides:

"The Company's Liability is Limited:

"Under Clause One (Liability) regardless of the number of Assured involved, the Company's liability for the loss from an accident resulting in bodily injuries to or in/death of one person is limited to five thousand dollars ($5,000.00), and, subject to the same limit for each person, the Company's total liability for loss from any one accident resulting in bodily injuries to or in the death of more than

one person is limited to ten thousand dollars ($10,000.00)."

The policy further provides:

"No action shall lie against the Company to recover for any loss, Damage and/or Expense, under this Policy, unless it shall be brought by the Assured for Loss, Damage and/or Expense actually sustained and paid by him in money in satisfaction of a judgment after trial of the issue, and no such action shall lie to recover under any other agreement of the Company herein contained unless brought by the Assured himself to recover money actually expended by him. In no event shall any such action lie unless brought within ninety days after the right of action accrues, as herein provided.

"The Assured shall upon the occurrence of an accident give immediate written notice thereof to the Company's Home Office, at Galveston, Texas, or its Agent duly authorized by law to receive the same, with the fullest information obtainable. He shall give like notice with full particulars of any claim made on account of such accident. If, thereafter, any suit is brought against the Assured he shall immediately forward to the Company, every summons or other process served upon him. The Assured, when requested by the Company, shall aid in effecting settlements, securing evidence, the attendance of witnesses and in prosecuting appeals. The Assured shall not voluntarily assume any liability, settle any claim or incur any expense, except at his own cost, or interfere in any negotiation for settlement or legal proceeding without the consent of the Company previously given in writing. The Company reserves the right to settle any such claim or suit brought against the Assured."

At the close of the testimony in the district court, the trial court withdrew the case from the jury, and entered judgment for the defendant. This judgment was, on appeal, affirmed by the Court of Civil Appeals. 295 S. W. 257.

The case is now before this court on writ of error granted on application of the plaintiff.

■ We are of the opinion that the plaintiff's petition states a cause of action against the defendant for the amount sued for, and that the evidence in the case raised an issue of fact to be submitted to the jury by the trial court under proper instructions.

■ The Court of Civil Appeals, in passing on the issues of this case holds: "We do not think the indemnity company was, by the terms of the policy, under any obligation to do more than faithfully defend the suit. As before stated, it had not agreed to settle the suit, but had reserved the right to do so. It had the unquestioned right to defend the suit to the end that it might not be called upon to pay a judgment which might be rendered in favor of Miss Bichon."

As stated in the beginning, the matters involved in this litigation are of first impression in this state, and the holding of the Court of Civil Appeals is in the main supported by the authorities cited by that court.

We, however, are of the opinion that the Court of Civil Appeals was in error in the above holding, and that the better and sounder authorities, and those more in harmony with the spirit of our laws, support a contrary rule. Douglas v. United States Fidelity & Guaranty Co., 81 N. H. 371, 127 A. 708, 37 A. L. R. 1477; Mendota Electric Co. v. New York Indemnity Co., 169 Minn. 377, 211 N. W. 317; Cavanaugh Bros. v. General Accident, Fire & Life Assur. Corporation, 79 N. H. 186, 106 A. 604; Attleboro Mfg. Co. v. Frankford, Marine Accident & Plate Glass Ins. Co. (C. C. A.) 240 F. 573; Brown & McCabe, Stevedores, Inc., v. London Guarantee & Accident Co. (D. C.) 232 F. 298.

As shown by the above-quoted provisions of the policy, the indemnity company had the right to take complete and exclusive control of the suit against the assured, and the assured was absolutely prohibited from making any settlement, except at his own expense, or to interfere in any negotiations for settlement or legal proceeding without the consent of the company; the company reserved the right to settle any such claim or suit brought against the assured. Certainly, where an insurance company makes such a contract; it, by the very terms of the contract, assumed the responsibility to act as the exclusive and absolute agent of the assured in all matters pertaining to the questions in litigation, and, as such agent, it ought to be held to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business; and if an ordinarily prudent person, in the exercise of ordinary care, as viewed from the standpoint of the assured, would have settled the case, and failed or refused to do so, then the agent, which in this case is the indemnity company, should respond in damages.

It is true that the policy is for $5,000, so far as this accident is concerned, but when the liability arose against plaintiff the indemnity company was in duty bound to exercise ordinary care to protect the interest of the assured up to the amount of the policy, for the reason that it had contracted to act as his agent, and assumed full and absolute control over the litigation arising out of the accident covered by the policy. The provisions of the policy giving the indemnity company absolute and complete control of the litigation, as a matter of law, carried with it a corresponding duty and obligation, on the part of the indemnity company, to exercise that degree of care that a person of ordinary care and prudence would exercise under the same or similar circumstances, and a failure to exercise such care and prudence would be negligence on the part of the indemnity company.

It is the duty of the court to give effect to all the provisions of the policy, and it would certainly be a very harsh rule to say that the indemnity company, in a case such as this, owed no duty whatever to the insured further than the face of the policy, regardless of whether it was negligent in discharging its duties as the sole and exclusive agent of the assured, in full and complete control. Such exclusive authority to act in a case of this kind does not necessarily carry with it the right to act arbitrarily. Douglas v. United States, etc., Guaranty Co., supra.

In the Douglas Case, supra, the Supreme Court of New Hampshire lays down the law, which we think applies to the issues of the case at bar, as follows:

"The fundamental question is, Does or does not the insurer owe to the insured a duty in the matter of a settlement? If it does not owe such a duty, it is not liable either for a failure to act or for the manner of action. It may refrain from completing a settlement for any reason, however essentially dishonest, and still there would be no liability. If, as the cases roundly state, it has an exclusive and absolute option, no one can question its motives for the exercise or nonexercise of the privilege. No case has gone that far. All acknowledge a liability for fraudulent conduct, or lack of good faith, in refusing to settle. But they are silent as to any reasoning which would sustain such liability and at the same time deny responsibility for negligent conduct.

"The whole question of insurance against loss may be laid out of the case, and still the defendant would be accountable for negligence. It has contracted to take charge of the defense of this claim. That contract created a relation out of which grew the duty to use care when action was taken. The insurer entered upon the conduct of the affair in question. It had and exercised authority over the matter in every respect, even to negotiating for a settlement. It is difficult to see upon what ground it could escape responsibility when its negligence resulted in damage to the party it had contracted to serve. Attleboro Manufacturing Co. v. Company, 240 F. 573, 153 C. C. A. 377.

"Denial of agency upon the part of the insurer is put upon the ground that, if there were such a relation the insurer would be bound to consider the interests of the insured, when in conflict with its own. It is then said that, when there is such conflict, the insurer may consult its own interests solely. Therefore, it is concluded, there can be no agency.

"This reasoning seems to imply that one party cannot be the agent of the other party. But the law is plainly otherwise. The parties may make that sort of an agreement if they see fit. The result of such a compact is not

548

to leave the promissor free to act as though he had made no promise. On the contrary, his conduct will be subject to closer scrutiny than that of the ordinary agent, because of his adverse interest. The fact that here the insurer stood to lose but a part of the claim, and that as to the balance of the chances of loss growing out of mismanagement of the defense were .upon the insured, is an added reason for holding the defendant to the use of reasonable care in the exercise of its exclusive control over the negotiations. Where one acts as agent under such circumstances, he is bound to give the rights of his principal at least as great consideration as he does his own. Colby v. Copp, 35 N. H. 434, and cases cited; Richards v. Insurance Co., 43 N. H. 263. The insurer cannot betray the trust it has undertaken nor be relieved from the usual rule that in such a case an agent must serve as he has promised to serve."

In the Cavanaugh Case, supra, the same court announces the same rule as is announced in the Douglas Case.

In our opinion the other authorities above cited sustain the rule announced by us, and, while there are authorities holding the contrary rule, we are constrained to believe that the correct rule under the provisions of this policy is that the indemnity company is held to that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business.

■ The Court of Civil Appeals holds that the trial court did not .err in refusing to permit Miss Bichon and others, all witnesses for plaintiff, to testify as to the serious nature of her injuries. We think this holding is error. Further, we are of the opinion that the serious nature of Miss Bichon's injuries and all the facts and circumstances surrounding her injury, are material as bearing on the question of negligence on the part of the indemnity company in failing and refusing to make the settlement.

Of course knowledge on the part of the indemnity company is also an issue. The facts and circumstances surrounding the original injury, and the extent of same, would not raise the issue of negligence on the part of the indemnity company unless it had knowledge thereof; or by the exercise of ordinary care could have had such knowledge.

■ We think, further, that the testimony offered by plaintiff, to the effect that it was a rule of the indemnity company never to make a settlement for more than one-half the amount of the policy, should have been admitted as bearing on the issue of negligence on the part of the indemnity company.

What we have said disposes of all the assignments.

We recommend that the judgments of the Court of Civil Appeals and of the district court be both reversed and the cause remanded to the district court for a new trial.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and cause remanded to the district court.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.