UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-20413
_____


ST. PAUL FIRE AND MARINE INSURANCE COMPANY;
ST. PAUL MERCURY INSURANCE COMPANY,

                                        Plaintiffs-Appellees,

                        versus

CONVALESCENT SERVICES, INC. doing business
as BAYOU GLEN NURSING HOME; MARK SCHULTZ,
executor of the estate of Jacob Schultz;
LILLIAN SCHULTZ,

                                        Defendants-Appellants.

_____

Appeal from the United States District Court for the
            Southern District of Texas
_____

October 19, 1999

Before POLITZ, DeMOSS, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

    This appeal involves the scope of an insurer's duty to its

insured in the context of settlement negotiations under Texas law.

Concluding that the Texas Supreme Court would not impose a duty

upon an insurer to take into consideration a claim specifically

excluded from coverage, we affirm.


I.    BACKGROUND

    St. Paul Fire and Marine Insurance Company (St. Paul) filed a

complaint for declaratory relief pursuant to 28 U.S.C. § 2201 in federal district court, seeking a determination that it was not liable for payment of a punitive damages award entered against its insured, Convalescent Services, Inc. (CSI), in a state court action in Harris County, Texas. The following events gave rise to the underlying state court action. Jacob Schultz was a patient at a nursing home owned by CSI called Bayou Glen Nursing Home. Schultz developed decubitus ulcers, which involved complete loss of skin and tissue and exposed bone structure. Recovery from the ulcers required hospitalization, surgery, and skin grafts. Schultz brought suit against CSI in Texas state court, alleging a variety of negligent acts and omissions that resulted in serious personal injury and near death. Schultz sought actual and punitive damages.

Although St. Paul insured CSI against damages arising from its negligence, the policy specifically excluded coverage for punitive damages. Pursuant to that policy, St. Paul defended CSI in the underlying state lawsuit. Prior to trial, Schultz made a settlement demand of $250,000, well within CSI's policy limits. At that time, Schultz's medical damages alone were $80,000. St. Paul rejected the demand and made a counteroffer of $35,000. The case proceeded to trial, and ultimately, finding CSI liable for negligence and gross negligence, the jury awarded Schultz $380,000 in actual damages and $850,000 in punitive damages. Although St. Paul paid the actual damages award on behalf of CSI, it refused to pay the punitive damages award based on an exclusion in the policy.

Thereafter, CSI executed an assignment of its rights against St. Paul to Schultz's estate in exchange for a covenant to delay

2

execution of the underlying state court judgment.[1]  CSI filed suit against St. Paul in the district court of Harris County, Texas, alleging that St. Paul had negligently handled the investigation and settlement negotiations in regard to Schultz's claim against CSI.  St. Paul then removed the suit to federal district court and filed the aforementioned complaint seeking a declaratory judgment that it did not breach any duties owed to CSI in connection with the defense and settlement of the underlying state court proceedings.

CSI counterclaimed, asserting that St. Paul breached its duty to exercise ordinary care in the defense, evaluation, and settlement of the lawsuit against CSI in violation of the doctrine set forth in *G.A. Stowers Furniture Co. v. American Indemnity Co.,* 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved).  St. Paul filed a motion for judgment on the pleadings, arguing that it had not violated its *Stowers* duty.  The district court agreed and granted St. Paul's motion for judgment on the pleadings.  The court entered final judgment declaring that St. Paul had no liability for payment of the punitive damages award.  CSI now appeals.

II.  ANALYSIS

A.  Negligent Failure to Settle under Texas Law

CSI contends that the district court erred in granting St. Paul's motion for judgment on the pleadings with respect to its counterclaim.  A judgment on the pleadings pursuant to Rule 12(c)

---

[1] CSI and Schultz's estate are the appellants on this appeal. For ease of reference, the appellants will be collectively referred to as CSI.

of the Federal Rules of Civil Procedure is reviewed *de novo*. *St. Paul Ins. of Bellaire v. AFIA Worldwide Ins.,* 937 F.2d 274, 279 (5th Cir. 1991). This Court must look only to the pleadings and accept all allegations in them as true. *Id.*

Specifically, CSI argues that St. Paul unreasonably refused to accept a $250,000 settlement demand in the underlying state court suit, thereby violating its duty under Texas law. To determine a state law question, federal courts must look to decisions of the highest state court. *Transcontinental Gas v. Transportation Ins. Co.,* 953 F.2d 985, 988 (5th Cir. 1992). If the state's highest court has not spoken on a particular issue, "it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Id.*

In Texas, an insurer must exercise the degree of care and diligence when responding to settlement demands within policy limits that "an ordinarily prudent person would exercise in the management of his own business." *Stowers*, 15 S.W.2d at 547. A failure to exercise such care constitutes negligence on the part of the insurance company. *Id.* This well-recognized duty arises from the obligations to defend and indemnify pursuant to the insurance contract and the control the policy grants to the insurer over the insured's defense. *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 846 (Tex. 1994).

The Texas Supreme Court has explained that an insurer's duty to settle under *Stowers* is not activated unless the following three requirements are met:

> (1) the claim against the insured is within

4

the scope of coverage, (2) the demand is within the policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment.

*Garcia*, 876 S.W.2d at 849.

CSI admits, as it must, that punitive damages are specifically excluded under its insurance policy issued by St. Paul. CSI maintains, however, that it has never asserted that St. Paul had a duty to settle a claim not covered under its policy. Instead, CSI argues that the *Stowers* duty to settle within policy limits was triggered because St. Paul knew that CSI was willing to pay its share of any demand for non-covered damages in order to avoid exposure to a large award of punitive damages.[2] In other words, if St. Paul had made CSI aware of its internal evaluation that the exposure to a punitive damages award was great, then CSI would have contributed toward a settlement based upon such exposure. CSI asserts that St. Paul knew or had reason to know that CSI would have been willing to contribute toward a settlement because, within the preceding year, at St. Paul's request, CSI had paid $100,000 of

---

[2] Although CSI now asserts that St. Paul's knowledge of CSI's willingness to contribute "triggered the classic *Stowers* duty," in its counterclaim filed in the court below, CSI candidly admitted that "St. Paul's breach of duty is not the classic *Stowers* breach, [because] the damages to which St. Paul has exposed its policyholder are not covered, and *Stowers* is premised upon an insurer's duty to settle a covered lawsuit." Indeed, the district court, in its opinion granting St. Paul's motion for judgment on the pleadings, took note of CSI's concession "that St. Paul did not breach its *Stowers* duty as set out by the three requirements listed in *Garcia*." Nevertheless, CSI did argue in its counterclaim that the duties set forth in *Stowers* were not so limited, and that St. Paul had breached its duty under *Stowers* "'to give the rights of his principal [policyholder] at least as great consideration as he does his own.'" (quoting *Stowers,* 15 S.W.2d at 548).

5

its own money toward settlement of an apparently unrelated action that presented a substantial risk of punitive damages.

CSI asserts that although the Texas Supreme Court has not addressed the merits of this particular type of *Stowers* claim, it specifically mentioned such a potential liability in *Garcia*, and *State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38, 41 n.6 (Tex. 1998). We disagree. In both of those cases, the question the Supreme Court expressly left open was "when, if ever, a *Stowers* duty may be triggered if an insured provides notice of his or her willingness to accept a reasonable demand above the policy limits, and to fund the settlement, such that the insurer's share of the settlement would remain within the policy limits." 876 S.W.2d at 849 n.13. Unlike those cases, in the case at bar, Schultz's settlement demand was not above CSI's policy limits. More importantly, in contrast to the case at bar, both *Garcia* and *Maldonado* involved claims--and damages corresponding to those claims--that were covered by the insurance policy.[3]

As the Texas Supreme Court stated in *Garcia*, "[w]e start with the proposition that an insurer has no duty to settle a claim that is not covered under its policy." 876 S.W.2d at 848. This language indicates that St. Paul had no duty to take into consideration CSI's potential exposure to punitive damages during

---

[3] In *Maldonado*, the Court did not reach the question left open in *Garcia* because there was no evidence that the insurer knew that the insured had made an unconditional offer to pay the amount of the settlement demand above policy limits. In its counterclaim, CSI alleged that St. Paul knew it was willing to contribute. As stated previously, because this case was disposed of on a Rule 12(c) motion, we accept all allegations in the pleadings as true.

6

settlement negotiations regarding covered claims. Therefore, we do not believe that the Texas Supreme Court would find that St. Paul's alleged knowledge of CSI's willingness to pay for the punitive portion of the settlement triggered the traditional duty to settle under *Stowers*.[4]

In short, *Stowers* holds insurers liable for damages on covered claims above policy limits to ensure that insurers accept reasonable settlement offers (especially ones close to policy limits) that an ordinarily prudent insured would have accepted. *Stowers* therefore extends the policy limits for covered claims; however, CSI's interpretation would, in effect, extend the actual coverage of the insurance contract.[5] CSI's argument wholly ignores the most basic proposition that an insurer has no duty to settle a non-covered claim. Given these circumstances, CSI has failed to establish that St. Paul had a duty under *Stowers* to accept the $250,000 settlement demand.[6]

---

[4] We express no opinion regarding how the Texas Supreme Court would decide the particular type of *Stowers* claim left open in *Garcia* and *Maldonado,* both of which involved claims that were covered.

[5] CSI argues that both extending policy limits for covered claims and extending actual coverage of the insurance contract involve the insurer being held liable for damages that it was not contractually obligated to pay. Though we understand CSI's argument, we simply do not believe that the Texas Supreme Court's precedent allows us to accept that argument. *See Garcia,* 876 S.W.2d at 848. Stowers extends policy limits when an insurer has negligently refused to settle a covered claim. *Stowers* does not extend or create coverage when an insurer negligently handles a claim against its insured that is not covered in the first instance.

[6] CSI also argues that the $250,000 settlement demand made by Schultz involved only the actual damages and did not encompass the punitive damages. Therefore, the first *Stowers* prerequisite would

7

Nevertheless, CSI argues that, independent of the duty in *Stowers* to accept reasonable settlement demands, St. Paul had a larger duty to handle the claims against CSI in a non-negligent manner. CSI relies on, *inter alia*, the standard of care language in *Stowers,* 15 S.W.2d at 547,[7] and the Texas Supreme Court's "holding" in *Ranger County Mut. Ins. Co. v. Guin*, 723 S.W.2d 656, 659 (Tex. 1987), that an insurer's duty extends to the full range of the agency relationship which includes investigation, preparation for defense of the lawsuit, trial of the case, and reasonable attempts to settle. Although *Ranger* does contain broad language regarding an insurer's duty to the insured, that language certainly is not the holding inasmuch as there was "no contention that [the insurer] was negligent in investigation or trial of the . . . lawsuit." *Ranger,* 723 S.W.2d at 659. Subsequently, in *Garcia*, the Texas Supreme Court referred to this language in *Ranger*

---

be met; i.e., the claim was a covered one. Even if the demand could be so construed, and thus, under *Stowers,* St. Paul negligently refused to settle the covered claim, CSI suffered no damages in this regard because the actual damages that corresponded to the covered claim did not exceed policy limits, and St. Paul paid the $380,000 in actual damages. Pursuant to *Stowers,* if the jury had awarded Schultz actual damages in excess of CSI's policy limits, St. Paul would have been liable for the entire amount of actual damages, including the amount in excess of policy limits.

[7]

> Certainly, where an insurance company makes such a contract; it, by the very terms of the contract, assumed the responsibility to act as the exclusive and absolute agent of the assured in all matters pertaining to the questions in litigation, and, as such agent, it ought to be held to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business.

8

as "dictum" and opined that "[i]n the context of a *Stowers* lawsuit, evidence concerning claims investigation, trial defense, and conduct during settlement negotiations is necessarily subsidiary to the ultimate issue of whether the claimant's demand was reasonable under the circumstances, such that an ordinarily prudent insurer would accept it." 876 S.W.2d at 849. Tellingly, CSI and the dissent in *Garcia* both rely on the same language in *Ranger*. Indeed, the dissent in *Garcia* accuses the majority of "retroactively" transforming the holding in *Ranger* "into mere `dictum.'" 876 S.W.2d at 863 n.7. It is clear to us that, in *Garcia*, the Texas Supreme Court drastically curtailed the broad language of *Ranger*.[8] This is true regardless whether that language in *Ranger* is deemed to constitute the holding.

CSI also relies on opinions from the Seventh and Eighth Circuits and the Northern District of Alabama to support its claim that St. Paul breached its duty to treat CSI's interests with equal consideration as its own.[9] Those three cases rely, at least in

---

[8] Notwithstanding *Garcia,* CSI argues that the Texas Supreme Court's affirmance of a portion of the court of appeals' opinion in *St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.,* 917 S.W.2d 29 (Tex.App.–Amarillo 1995), *affirmed in part, reversed in part on other grounds,* 974 S.W.2d 51 (Tex. 1998), has reaffirmed the holding in *Ranger* that an insurer has a duty of ordinary care in the handling of a claim, including the investigation and evaluation of that claim. We are not persuaded because, subsequent to *Dal-Worth,* the Texas Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Traver,* reiterated that "*Ranger's* broad language about the scope of the insurer's responsibilities was *dicta.*" 980 S.W.2d 625, 628 (Tex. 1998).

[9] *Carpenter v. Auto. Club Interins. Exch.,* 58 F.3d 1296 (8th Cir. 1995); *Twin City Fire Ins. Co. v. Country Mut. Ins. Co.,* 23 F.3d 1175 (7th Cir. 1994); and *Carrier Express, Inc. v. Home Indem. Co.,* 860 F.Supp. 1465 (N.D. Ala. 1994).

9

part, on the insurer's duty of good faith and fair dealing. In Texas, a *Stowers* claim is not a bad faith claim. *Maryland Ins. Co. v. Head Indus. Coatings and Serv., Inc.*, 938 S.W.2d 27, 28 (Tex. 1996). Furthermore, the Texas Supreme Court has expressly held that an insurer does not owe its insured a duty of good faith and fair dealing to investigate and defend claims by a third party against its insured. *Id.* This Court has recognized that holding and explained that "[i]n this context, the *Stowers* duty is the only tort duty the insurer must comply with; the duty of good faith in handling insurance claims does not apply." *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 764 (5th Cir. 1999).[10]

We also rely on the Texas Supreme Court's decision in *Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312 (1994), to assist us in making our *Erie*[11] guess. In that case the question was whether the insurer was negligent for failing to settle certain claims that were filed against its insured as a result of a car accident.[12] Two sets of claimants, the Medinas and the Lopezes, sought recovery from the insured. The insured had only the minimum insurance

---

[10] This panel is bound by another panel's previous interpretation of state law absent a subsequent state court decision that renders this Court's previous decision incorrect. *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995).

[11] *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817 (1938).

[12] The insured also claimed that the insurer breached its duty of good faith and fair dealing in failing to settle certain claims. Because the insurer did not challenge whether the duty of good faith and fair dealing applied in the context of third-party claims, the Texas Supreme Court did not decide that issue. Subsequently, the Court held that such a duty did not apply in the context of third-party claims. *Head,* 938 S.W.2d at 28.

10

coverage of $20,000 per occurrence, and the insurer offered the full policy limits of $20,000 to the Medinas, but the offer was refused. Subsequently, the Lopez claim was settled for $5,000. The insurer then offered the remaining $15,000 to the Medinas, who demanded the original offer of $20,000. The case went to trial, and the jury awarded the Medinas $172,187 in damages. Soriano assigned his rights against the insurer to the Medinas, who sued the insurer for its negligent handling of the Medinas' claims. The jury found that the insurer was negligent for failing to settle and awarded $520,577.24 in actual damages. The court of appeals affirmed the award, finding that there was some evidence that the Lopez settlement was unreasonable and negligent. The Texas Supreme Court reversed, holding that "an insurer may enter into a reasonable settlement with one of . . . several claimants even though such settlement exhausts or diminishes the proceeds available to satisfy other claims." 881 S.W.2d at 315. Put another way, when determining whether to accept a settlement demand in a case involving multiple claims and inadequate proceeds, an insurer may consider only the merits of that particular claim and the corresponding potential liability of its insured. The Court explained that "[t]his standard is nothing more than what is required of an insurer under *Stowers*." *Id.*

Thus, because the Texas Supreme Court does not impose a duty upon insurers to consider other *covered* claims when faced with a settlement demand by one claimant, we believe that the Court would not impose a duty upon insurers to consider claims that are *not* covered--here, the punitive damage claims--by its policy during

11

settlement negotiations involving one claimant. While recognizing the expansive language in *Stowers* regarding an insurer's duty to the insured, we cannot square the Texas Supreme Court's recent precedent interpreting *Stowers* with a holding that the insurer has a duty to consider claims that are excluded from coverage when making its determination of whether a settlement is reasonable.

CSI also cites numerous other cases in support of its various arguments; however, what this Court must do is predict what the Texas Supreme Court would now hold. When making an "*Erie* guess, it is not our role to create or modify state law, rather only to predict it." *Lawrence v. Virginia Ins. Reciprocal*, 979 F.2d 1053, 1055 (1992). In light of its more recent precedent, we feel constrained to hold that the Texas Supreme Court would conclude that St. Paul did not breach any tort duty to CSI.[13]

### B.   Whether CSI Sufficiently Raised Statutory Claims

In its final argument, CSI asserts that St. Paul is liable under the Texas Deceptive Trade Practices Act (DTPA), the Texas Insurance Code, and common law negligence[14] for the damages it caused when it failed to investigate properly the claim and to communicate to CSI its evaluation that CSI was exposed to a

---

[13]   Because we determine that St. Paul did not breach any tort duty to CSI, we need not reach St. Paul's argument that Texas public policy now prohibits insurance companies from paying punitive damage awards. *See Hartford Cas. Ins. Co. v. Powell,* 19 F.Supp.2d 678 (N.D. Tx. 1998) (discussing the history of punitive damages under Texas law and a prior Fifth Circuit holding that Texas public policy would not prevent liability insurance coverage of punitive damages; concluding that Texas public policy now prohibits such a payment).

[14]   As set forth above, the only tort duty that St. Paul owed to CSI arises under *Stowers*.

substantial risk of punitive damages.  St. Paul responds that these statutory claims were not plead.  We agree.  Although in its answer CSI cursorily mentioned these statutory claims, there is no reference to either the DTPA or the Insurance Code in CSI's counterclaim.  CSI failed to raise properly these statutory claims in the court below, and that is further evidenced by the district court's complete omission of any reference to such claims in its order granting St. Paul's motion for judgment on the pleadings.  We refuse to consider claims that were not properly raised in the district court.  *First United Financial Corp. v. Specialty Oil Co.,* 5 F.3d 944, 948 n. 9 (5th Cir. 1993); *see also Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

For the above reasons, the district court's judgment is AFFIRMED in all respects.