

# NUMBER 13-19-00452-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

WILLIAM MOSER, DREAMA GREENE,
MATTHEW MOODY, INDIVIDUALLY,
MATTHEW MOODY AS LEGAL GUARDIAN
AND NEXT FRIEND OF EMILY MOODY,
A MINOR, AND MATTHEW MOODY AS
LEGAL GUARDIAN AND NEXT FRIEND
OF MARILYN MOODY, A MINOR,                          Appellants,

v.

TEXAS FARM BUREAU MUTUAL
INSURANCE COMPANY,                                  Appellee.

## On appeal from the 28th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

Before Justices Benavides, Hinojosa, and Silva
Memorandum Opinion by Justice Hinojosa

The trial court denied appellants' William Moser, Dreama Greene, Matthew Moody, Individually and as Legal Guardian and Next Friend of Emily Moody and Marilyn Moody, minors (collectively, the Heirs'), motion for summary judgment on a declaratory action. The order ruled that appellee, Texas Farm Bureau (TFB), offered its insurance policy limits on multiple occasions, thus halting its liability for accruing post-judgment interest on a March 22, 2018, jury judgment for $11,885,974.35 in favor of the Heirs.

By five issues which we re-organize and consolidate into four, the Heirs argue: (1) that the trial court erred in denying its traditional motion for summary judgment on declaratory judgment because TFB's Supplemental Payment Provision of the insurance policy was ambiguous, and also because TFB's offers were conditional, made prior to judgment, and were for less than the amount owed; (2) that TFB had no right to interpleader; (3) that TFB had unclean hands; and (4) that the Heirs did not owe TFB a "legal duty to instruct it how to practice law." We affirm.

## I.   BACKGROUND

### A.   The Incident

On December 8, 2014, Christopher Floyd collided head-on with a vehicle, resulting in the deaths of driver Faye Moser and her passenger Teresa Moody. Floyd had an auto liability insurance policy with TFB, Policy # 23024769, with bodily injury policy limits of $30,000 per person and $60,000 per accident.

### B.   Pre-Trial Litigation

On March 9, 2015, TFB received a *Stowers* demand letter from Dreama Greene and William Moser, the heirs of Moser, and Matthew Moody, Emily Moody, and Marilyn

Moody, the heirs of Moody. *See Stowers Furniture Co. v. Am. Indem. Co.,* 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved) (holding that an insurer has the duty to exercise ordinary care in the settlement of claims to protect its insureds against judgments in excess of policy limits). TFB accepted the *Stowers* demand on March 23, 2015, and made a settlement offer. In its acceptance letter, TFB sought information concerning the beneficiaries and the amount to pay each beneficiary.

On May 19, 2015, TFB sent email correspondence to follow-up on its March 23, 2015 acceptance of the Heirs' *Stowers* demand. In its correspondence, TFB asked, "Please provide us with a status on this one. The demand was accepted back in March and we are waiting on the information pertaining to the personal representatives and/or heirs and wrongful death beneficiaries . . . ." On June 30, 2015, TFB sent another follow-up email correspondence regarding the case: "Please let us know a status and if there is anything else that you need from us at this point to get this one finalized."

The Heirs responded on June 30, 2015, stating that they were awaiting the fatality packet from the Texas Department of Public Safety (DPS). On September 15, 2015, the Heirs indicated that they were still awaiting the DPS information packet, with their legal representative noting: "I'll send updates. I am more than ready to move on the case, and I know our clients are not pleased with the very long wait. I can understand [TFB's] desire to close the claim."

C. **Underlying Litigation and Judgment**

Without further communication, the Heirs filed suit against TFB. On December 22,

2017, heirs Greene and Moody sent another *Stowers* demand letter.[1] TFB accepted this demand on January 3, 2018, and offered policy limits in return for a full and final release from any and all claims. On January 4, 2018, Greene and Moody "respectfully decline[d]" TFB's "counteroffer" for policy limits.

The jury trial commenced on January 29, 2018. On February 1, 2018, the jury returned a verdict of $11,885,974.35 in favor of the Heirs.[2]

The trial court held a hearing on a motion to enter judgment on March 21, 2018. At the hearing, TFB asked the Heirs if they had a breakdown of how they wanted the checks issued. Counsel for the Heirs replied that they were not prepared with that information. TFB then offered to put checks in the amount of the policy limits and court costs into the registry of the court. TFB explained on the record that it wanted to tender payment "immediately" so that post-judgment interest would not accrue. TFB's insurance policy had a "Supplemental Payment Provision," which provided that the insurer was required to pay post-judgment interest accruing on any judgment against the insured. The policy, however, had a limitation. The relevant language of the policy follows:

> In addition to **our** Limit of Liability, **we** will pay on behalf of a **covered person**:
>
> . . . .
>
> 3. Interest accruing after a judgment is entered in any suit **we** defend. **Our** duty to pay interest ends when **we** offer to pay that part of the judgment which does not exceed **our** Limit of Liability for this coverage.

---

[1] We note that both Greene and Moody were included in the original *Stowers* demand on March 9, 2015.

[2] The jury made the following awards: $111,029.35 to Moser; $111,029.35 to Greene; $555,146.72 to Moody, individually; $5,551,467.29 to Moody, as next friend of Emily Moody; and $5,551,467.29 to Moody, as next friend of Marilyn Moody.

(Emphasis in original).

The trial court signed a final judgment the next day on March 22, 2018. On March 23, 2018, TFB issued two checks in the amount of $30,000 each. The first check was issued to Moser and Greene, and stated, "In Full Payment For On Behalf of Faye Moser."



The other check was issued to Matthew, Emily, and Marilyn Moody, and it provided, "In Full Payment For On Behalf of Teresa Moody."



TFB also issued a check for $5,834.35 for court costs. The letter enclosing the checks asked the Heirs' counsel to "[p]lease contact [TFB] in the event that the checks need to

be reissued per Plaintiffs' distribution amount."

On March 23, 2018, counsel for the Heirs responded to TFB, writing "letter received. I am returning the checks with this document because they are improperly conditioned and improperly made out. They are not unconditional payments. And, the checks are in the wrong amount." Counsel for TFB responded via written correspondence on March 29, 2018, urging the Heirs to discuss what specific concerns they had regarding the checks and reiterating TFB's desire to tender policy limits.

## D. The Interpleader

On May 23, 2018, TFB filed an interpleader seeking to deposit three checks in the total amount of $65,834.35 into the registry of the court. TFB contended that interpleader was necessary so that it could meet its obligations to the judgment creditor defendants. TFB argued that it consistently offered its limits of liability "pre-suit, pre-trial, post-verdict, and post-judgment." The Heirs answered the petition in interpleader and also filed a counterclaim for declaratory judgment. In this joint answer and counterclaim, the Heirs asserted that they not only wanted the limits of liability from TFB in "proper tender," but also over $700,000 in post-judgment interest, increasing at a rate of $1,709.63 per day, because TFB failed to tender its checks properly.

TFB answered the counterclaim and generally denied all assertions by the Heirs. It proclaimed that it attempted to pay policy limits "on multiple occasions even prior to the initiation of a lawsuit" and repeatedly attempted to pay after the trial "only to be met with utter silence."

TFB filed a motion for summary judgment on its interpleader on June 18, 2019,

6

and the Heirs filed a countermotion for summary judgment on their declaratory judgment on July 10, 2019. The trial court conducted a hearing on both motions for summary judgment. On August 19, 2019, the trial court granted TFB's summary judgment motion on interpleader, while denying the Heirs' declaratory action summary judgment. The order provided that TFB owed $64,834.35 to the Heirs ($30,000 to the Moser heirs, $30,000 to the Moody heirs, plus $5,834.35 in court costs), and no post-judgment interest. TFB tendered these proceeds into the registry of the court.

On September 17, 2019, TFB filed a motion to sever wherein it sought to sever the interpleader action.[3] The trial court granted the motion to sever on November 13, 2019. The motion to sever resulted in two trial court causes: 2018DCV-2714-A, which now contains the issue of the division of the policy proceeds deposited into the registry of the court, and 2019DCV-5885-A, which is the source of this appeal.[4]

## II.     THE MOTION FOR SUMMARY JUDGMENT ON DECLARATORY ACTION

By their first issue, the Heirs argue the trial court erred in denying their traditional motion for summary judgment on their declaratory action.

## A.     Standard of Review and Applicable Law

We review an order granting summary judgment on a de novo standard, "taking as

---

[3] On September 17, 2019, the Heirs also filed a suggestion of death of defendant Matthew Moody. A relative of Moody, George Finley, moved to substitute himself as the next friend for the minors Emily Moody and Marilyn Moody. The Heirs also filed a suggestion of death of defendant William Moser. William's sister, Greene, requested that the case continue in her name alone. However, because the order from which this case was appealed still includes both Moody and Moser's names as defendants, the style of our case will reflect the same. See TEX. R. APP. P. 7.1(a)(1).

[4] The Heirs also filed a motion for new trial and motion for reconsideration, which were overruled by operation of law.

7

true all evidence favorable to the nonmovant and indulging every reasonable inference in the nonmovant's favor." *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). To be entitled to traditional summary judgment, the movant has the burden to prove that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Hillis v. McCall*, 602 S.W.3d 436, 439–40 (Tex. 2020); TEX. R. CIV. P. 166a(c).

"When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented." *Tex. Mut. Ins. Co. v. PHI Air Med., LLC*, 610 S.W.3d 839, 846 (Tex. 2020), *cert. denied*, No. 20-748, 2021 WL 1602647 (U.S. Apr. 26, 2021). "The reviewing court should render the judgment that the trial court should have rendered." *Id.*

Declaratory judgment actions enable Texas courts "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 37.003. The purpose of the Uniform Declaratory Judgments Act (UDJA) "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." *Id.* § 37.002(b). Under the UDJA, any "person interested" under a written contract "may have determined any question of construction or validity" arising under that contract and "obtain a declaration of rights, status, or other legal relations thereunder." *Id.* § 37.004(a).

8

**B. Analysis**

The Heirs sought a declaratory judgment holding that they were entitled to post-judgment interest from TFB. The Heirs contend the trial court erred in denying their motion for summary judgment because TFB's Supplemental Payment Provision policy, which set forth the condition to trigger post-judgment interest, was ambiguous, and also because TFB's offers were conditional, made prior to judgment, and were for less than the amount owed. We will analyze each argument in turn.

**1. TFB's Policy is "Ambiguous"**

The Heirs, as third party beneficiaries under the insurance policy, assert that the insurance policy does not state whether the "offer to pay" must be unconditional or conditional, and, thus, the policy is ambiguous.

**a. Applicable Law**

An insurance policy is a contract and generally its construction is governed by contract interpretation principles. *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). The language of the contract is the best representation of the intent of the parties. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). Policy terms are given their ordinary meaning unless the policy shows that words are meant in a technical or different sense. *Id.*

A policy is not ambiguous simply because two conflicting interpretations are advanced. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). When the policy language is not ambiguous, there is no requirement that a reasonable construction offered by a party be adopted over an insurance carrier's more reasonable

interpretation. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987).

However, if policy language is susceptible to more than one interpretation, such policies should be construed strictly against the insurer and liberally in favor of the insured. *Id*. This is because the "language and terms of an insurance policy are chosen by the insurance company." *Id*. This tenet is especially true when a case involves a limitation of liability: courts "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Id*. (quoting *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977)).

### b. Analysis

The Heirs contend that the "offer to pay" phrase in TFB's Supplemental Payment Provision is ambiguous and that their construction—that the offer must be unconditional—should be adopted. The Heirs first rely on three cases—*Western Casualty & Surety Co. v. Preis*, 695 S.W.2d 579 (Tex. App.—Corpus Christi–Edinburg 1985, writ ref'd n.r.e.), *Baucum v. Great American Insurance Co.*, 370 S.W.2d 863 (Tex. 1963), and *Plasky v. Gulf Insurance Co.*, 335 S.W.2d 581 (Tex. 1960)—for the proposition that TFB's offers should have been unconditional. These cases posit that an insurance company's tender should be an "*unconditional* offer by a debtor or obligor to pay another, in current coin of the realm, a sum not less in amount that that due on a specified debt or obligation." *Baucum*, 370 S.W.2d at 866 (emphasis added).

The *Preis*, *Baucum*, and *Plasky* courts, however, addressed policy language

notably different from the TFB policy: the policies required *actual* tender or payment, not just an offer to pay. For example, the *Baucum* policy mandated that the insurance company had to pay

> all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company *has paid or tendered or deposited* in court such part of such judgment as does not exceed the limits of the company's liability thereon.

*Baucum*, 370 S.W.2d at 864 (emphasis added). The *Preis* court analyzed similar policy language. *See* 695 S.W.2d at 582 (citing the insurance company had to pay "all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before The Western has *paid or tendered or deposited* in court that part of the judgment which does not exceed the limit of the Western's liability thereon") (emphasis added). And the *Plasky* policy provided that the insurance company shall pay all interest accruing after entry of judgment "until the company has *paid, tendered or deposited* in court such part of such judgment as does not exceed the limit of the company's liability thereon." 335 S.W.2d at 582 (emphasis added). The TFB policy, however, does not require "payment," "tender," or "deposit"; the language only requires an "offer to pay." Accordingly, we find these cases inapposite to our analysis.

Texas Farmers Insurance Company v. Miller, on the other hand, which the Heirs heavily relied upon in their summary judgment and appellate briefing, has policy language similar to the policy before us. *See* No. 03-97-00233-CV, 1997 WL 746027 (Tex. App.—Austin 1997, pet. denied) (mem. op.). In *Miller*, the policy had a Supplemental Payment Provision that set forth the following:

In addition to our limit of liability, we will pay on behalf of a covered person:

11

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

*Id*. at *1. The *Miller* Court found that the insurance company owed post-judgment interest to the plaintiff. *Id*.

We decline, however, to place as much reliance on *Miller* as the Heirs do. We note that although the policy language between *Miller* and the case before us is similar, it is not identical: *Miller* refers to a general offer for the "limit of liability" whereas here TFB had to offer its "Limit of Liability"—a proper noun referring to a defined amount in the policy. *See id*. Further, *Miller* is an unpublished case decided in 1997 by our sister court in Austin, Texas. Our review of the *Miller* case history reveals that, in the twenty-five years since its release, only five cases have cited to it as authority, and only one of those cases was from a Texas court. *See Johnson v. State Farm Mut. Automobile Ins. Co*., 520 S.W.3d 92, 99 (Tex. App.—Austin 2017, pet. denied). Moreover, the *Johnson* case cited *Miller* on the unrelated issue of family member exclusions in vehicle insurance policies, not for its stance on post-judgment interest. *Id*. at 99.

Here, the Supplemental Payment Provision language provides TFB's "duty to pay interest ends when [it] offer[s] to pay that part of the judgment which does not exceed [its] Limit of Liability for this coverage." TFB's policy is clear—the duty to pay post-judgment interest ends when an "offer to pay" is made. The policy does not state that an "unconditional" offer must be made. It does not state that "payment," "tender," or a "deposit" must occur. *Cf. Baucum*, 370 S.W.2d at 865; *Preis*, 695 S.W.2d at 582; *Plasky*, 335 S.W.2d at 582. And even though this language involves an exclusionary clause which

12

must be interpreted strictly, the Heirs' interpretation is not a reasonable one as it would change the meaning of the policy. *Barnett*, 723 S.W.2d at 666; *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 267 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("Indeed, the courts are not at liberty to redraft the terms of a contract while professing to construe it, so as to impose additional duties on one party.").

We will not re-draft a contract that has been agreed upon by the parties. *Fein*, 68 S.W.3d at 267. Instead of looking to an outlier case like *Miller* to guide our analysis with persuasive authority, we rely upon mandatory supreme court authority which encourages us to look at the plain, ordinary meaning of the language in the insurance policy. *Gilbert Tex. Constr., L.P.*, 327 S.W.3d at 126. Accordingly, we find the Heirs' argument that the contract was ambiguous to be unpersuasive.

### 2. TFB's Offers Were Conditional Upon Release

The Heirs also argue the trial court erred in denying their summary judgment because TFB's offers were conditioned upon a release. They cite, in particular, the pre-printed language on the checks offered to the heirs of Moser, which stated, "In Full Payment For On Behalf of Faye Moser." They make similar complaints about the check issued to Teresa's heirs Moody, Emily, and Marilyn, and it provided, "In Full Payment For On Behalf of Teresa Moody."

As we previously held, there was no language in the policy indicating that the offers had to be unconditional. Even ignoring this fact, though, we note that the pre-printed language on the checks would not constitute a release of judgment. "An accord and satisfaction exists when parties agree to discharge 'an existing obligation in a manner

13

other than in accordance with the terms of their original contract.'" *Cleveland Reg'l Med. Ctr., L.P. v. Celtic Props., L.C.*, 323 S.W.3d 322, 335 (Tex. App.—Beaumont 2010, pet. denied). This defense involves a new contract, either express or implied, wherein the parties agree that the existing obligation is released by means of a lesser payment, which is tendered and accepted. *Id.; see also Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex. 1969). The evidence must establish that the parties agreed that the lesser amount paid "was in full satisfaction of the entire claim." *Jenkins*, 449 S.W.2d at 455. Thus, there must be an "unmistakable communication to the creditor that tender of the reduced sum is upon the condition that acceptance will satisfy the underlying obligation." *Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 863 (Tex. 2000) (citing *Jenkins*, 449 S.W.2d at 455).

Here, even assuming that the checks were issued in an amount lower than what the Heirs were entitled to, there was no agreement between the parties that TFB's offer of the checks would constitute a release of any obligation. This is highlighted by the fact that TFB sent the checks with a letter asking the Heirs' counsel to "[p]lease contact [TFB] in the event that the checks need to be reissued per Plaintiffs' distribution amount." This argument also fails.

### 3. TFB's Offers Were Made Prior to Judgment

The Heirs further cite *Miller* for the proposition that prejudgment offers to pay the limits of liability do not stop the accrual of the post-judgment interest. *See Miller*, 1997 WL 746027, at *2.

Assuming without deciding that the policy requires post-judgment offers to settle,

14

the record reflects that TFB made multiple offers to pay after judgment was entered. On March 21, 2018, when the hearing on the motion to enter judgment occurred, TFB offered to tender payment "immediately" so that post-judgment interest would not accrue. On March 23, 2018, TFB issued two checks in the amount of the policy limits along with a letter asking the Heirs' counsel to "[p]lease contact [TFB] in the event that the checks need to be reissued per Plaintiffs' distribution amount." On March 29, 2018, TFB wrote again to counsel for the Heirs reiterating its desire to tender policy limits and urging them to relay their specific concerns regarding the check issuance. In light of this record, we find this argument without merit.

### 4. TFB's Offer was Less than the Amount Owed

The Heirs finally contend that TFB's offer was less than the amount owed because it did not include post-judgment interest. Again, based on a review of the record, we disagree. TFB made multiple offers to pay its Limits of Liability, or $60,000 plus court costs, to the Heirs, thus meeting its obligation under the policy and preventing accrual of post-judgment interest under the Supplemental Payment Provision.

### 5. Conclusion

The Supplemental Payment Provision language is plain and not ambiguous. Under its terms, TFB made clear "offers to pay" that stopped the accrual of potential post-judgment interest. Reviewing the denial of the Heirs' motion for summary judgment on a declaratory judgment on a de novo standard, we conclude that the Heirs were not entitled to post-judgment interest as a matter of law. *Hillis*, 602 S.W.3d 439–40; TEX. R. CIV.

P. 166a(c). We overrule this issue.

## III.     INTERPLEADER[5]

By their third issue, the Heirs contend the trial court erred when it granted TFB's motion for summary judgment on interpleader because it failed to conclusively establish each element of its claims.

### A.     Applicable Law

Pursuant to Texas Rule of Civil Procedure 43, a party who receives multiple claims to funds in its possession may join all claimants in one lawsuit and tender the disputed funds into the registry of the court. TEX. R. CIV. P. 43; *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018). By placing the funds in the control of the court for the court to decide ownership, the interpleading party is relieved from the potential liability to pay the funds more than once, and also from the litigation costs attending the rival claims. *Clayton v. Mony Life Ins. Co. of Am.*, 284 S.W.3d 398, 402 (Tex. App.—Beaumont 2009, no pet.).

A party is entitled to interpleader relief if three elements are met: "(1) it is either subject to, or has reasonable grounds to anticipate, rival claims to the same funds; (2) it has not unreasonably delayed filing its action for interpleader; and (3) it has unconditionally tendered the funds into the registry of the court." *Fort Worth Transp. Auth.,*

---

[5] Contrary to TFB's assertions, we have jurisdiction over the trial court's granting of the motion for summary judgment of TFB's interpleader. Although TFB asserts that, "the interpleader pending under cause number 2018DCV-2714-A remains a separate case in the court below," the trial court order being appealed in 2019DCV-5885-A grants "Plaintiff Texas Farm Bureau Mutual Insurance Company's Original Petition in Interpleader (filed 05/23/2018)" and the "Order Granting Interpleader-Plaintiff/Counter-Defendant Texas Farm Bureau Mutual Insurance Company's Motion for Summary Judgment." The pending case in Nueces County district court, 2018DCV-2714-A, concerns the division of proceeds deposited into the registry of the court. That issue is not before us. The motion for summary judgment on interpleader is.

16

547 S.W.3d at 850.

**B.    Analysis**

TFB was entitled to interpleader relief because it conclusively established the three elements required by Rule 43. *See* TEX. R. CIV. P. 43. First, TFB was subject to multiple liabilities because each Heir was awarded greater damages in the initial lawsuit, cause number 2016DCV-4041-H, than the policy limits. Further, despite multiple requests, the Heirs refused to provide TFB with an agreed-upon division of the policy limits. Second, TFB did not unreasonably delay its action to file an interpleader. The final judgment was entered on March 22, 2018, and after offering to tender policy limits multiple times, TFB filed its interpleader on May 23, 2018. A two-month delay is not considered an unreasonable delay. *See State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 807 (Tex. 2007) (holding, in a life insurance case, that interpleader actions filed within sixty days are not unreasonably late). Third, TFB unconditionally tendered the limits of its liability into the court's registry—the sum of $60,000, as well as a check for court costs for $5,834.35, thus meeting the third criteria.

Reviewing the trial court's order granting summary judgment on TFB's interpleader on a de novo standard, taking as true all evidence favorable to the Heirs, and indulging every reasonable inference in the Heirs' favor, we conclude the summary judgment was proper on the interpleader. *JLB Builders, L.L.C.*, 622 S.W.3d at 864. We overrule this issue.

## IV.    UNCLEAN HANDS

The Heirs also argue that the trial court erred in granting TFB's motion for summary

judgment because TFB had unclean hands.

## A.     Standard of Review and Applicable Law

"To defeat a plaintiff's motion for summary judgment with an affirmative defense, the defendant must bring forth evidence sufficient to raise a genuine issue of material fact on each element of its affirmative defense." *TEC Olmos, LLC v. ConocoPhillips Co.*, 555 S.W.3d 176, 180–81 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984)).

"[I]nterpleader is an equitable remedy intended to fill the gaps when legal remedies are inadequate." *Mathis v. United Inv'rs Life Ins. Co.*, 123 S.W.3d 654, 656 (Tex. App.—Dallas 2003, pet. denied). "Unclean hands" is an affirmative defense that may bar a party with unclean hands from obtaining equitable relief. *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988) ("It is well-settled that a party seeking an equitable remedy must do equity and come to court with clean hands."); *Union Gas Corp. v. Gisler*, 129 S.W.3d 145, 153 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.). A party has unclean hands when its conduct in "connection with the same matter or transaction has been unconscientious, unjust, marked by a want of good faith, or violates the principles of equity and righteous dealing." *Flores v. Flores*, 116 S.W.3d 870, 876 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.).

## B.     Analysis

The Heirs contend that TFB had unclean hands because its numerous offers to pay did not include post-judgment interest. They argue that TFB was not an "innocent party" and that it filed its interpleader action "to litigate an ongoing dispute with the Mosers

about how much it owed for post-judgment interest." *See Union Gas Corp.*, 129 S.W.3d at 153 ("The purpose of interpleader is to allow an innocent stakeholder facing rival claims to let the courts decide who is entitled to the fund and thus avoid the peril of acting as judge and jury itself."). For the reasons elucidated before in this opinion, we find this argument unpersuasive. TFB's multiple offers of policy limits were not made in an unconscientious or unjust manner, in bad faith, and did not violate principles of fair dealing. *Flores*, 116 S.W.3d at 876. Rather, they were attempts for the insurance company to fulfill its obligation under Floyd's insurance policy.

Because the Heirs did not raise an issue of material fact on each element of the "unclean hands" affirmative defense, the trial court did not err in granting TFB's motion for summary judgment on interpleader. *See TEC Olmos, LLC*, 555 S.W.3d at 180–81; *Brownlee*, 665 S.W.2d at 112. We overrule this issue.

## V. LEGAL DUTY

The Heirs also argued that they did not have a "legal duty" to tell TFB "how to practice law," or to explain why its multiple offers to pay were defective. They cite *Baucum* for the premise that, "Silence on the part of the payee would not constitute a waiver of the elements of a valid tender. He is not required [t]o accept or reject until a tender has been made." *Baucum*, 370 S.W.2d at 867.

TFB counters this by contending that asking an attorney how his clients want their checks split is common courtesy, not a request for legal advice. We agree with TFB. Again, we find *Baucum* inapplicable because *Baucum* required *tender*; here, TFB was only required to make an *offer*. *Id*. And, even if *Baucum* did apply, TFB *did* tender checks

19

in the amount of policy limits on March 23, 2018.

Both the Texas Lawyer's Creed and Texas Rules of Professional Conduct encourage cooperation between counsel to settle disputes. *See* TEX. LAWYER'S CREED, Part III ("A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings."); TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.02 ("In the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter."). We encourage the same here. We overrule this issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Delivered and filed on the
23rd day of September, 2021.