# IN THE SUPREME COURT OF TEXAS

No. 19-0701

IN RE FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, RELATOR

ON PETITION FOR WRIT OF MANDAMUS

**Argued September 17, 2020**

JUSTICE BUSBY delivered the opinion of the Court in which JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE DEVINE, JUSTICE BLAND, and JUSTICE HUDDLE joined, and in which CHIEF JUSTICE HECHT, JUSTICE BOYD, and JUSTICE BLACKLOCK joined as to Parts I and II.

CHIEF JUSTICE HECHT filed an opinion dissenting in part, in which JUSTICE BOYD and JUSTICE BLACKLOCK joined.

These mandamus petitions, which challenge rulings on a Rule 91a motion to dismiss, require us to examine the legal basis of claims against a liability insurer that solicited its insured to fund part of a settlement. According to the petition, the insurer chose to settle claims against its insured within policy limits but obtained a release that was contingent on the insured paying $100,000 of the $350,000 settlement. The insured paid and filed this suit for reimbursement, which the insurer seeks to dismiss on the ground that the insured's claims for negligent failure to settle and for breach of contract have no basis in law.

We agree with the insurer that the insured has no *Stowers* claim for negligent failure to settle because there was no judgment or settlement in excess of policy limits. But the insured can pursue her claim that the insurer breached its obligation to indemnify her for amounts she was legally responsible to pay under the settlement. The insurer does not assert that the

settlement was unauthorized, but whether the insured can succeed on her claim may depend on other issues including coverage and the reasonableness of the settlement amount. We conditionally grant mandamus relief accordingly.

## BACKGROUND

Gary Gibson sued Cassandra Longoria for damages he sustained in an automobile accident when Longoria rear-ended his vehicle. Longoria had purchased liability insurance from Farmers Texas County Mutual Insurance Company, which provided an attorney to represent her. Gibson alleged that Longoria's negligence caused him serious bodily injury and sought damages of $1 million, which was more than Longoria's $500,000 policy limit. Gibson designated experts, but Longoria alleges that the attorney representing her failed to designate an expert by the deadline, and the trial court denied a motion to make a late expert designation.

Two months before trial, Gibson and Longoria attended mediation. Longoria, concerned about her potential liability for damages above her policy limits, brought her own attorney with her. The mediator proposed that the case settle for $350,000. After mediation, Gibson notified Farmers that he would accept the mediator's proposal. Farmers made a counteroffer of $250,000. According to Longoria's petition, Farmers "suggested" or "ma[de] a demand" that she "contribute the additional $100,000 necessary to secure a release." Farmers also stated that Longoria had "created potential liability for gross negligence" even though that claim "had not been asserted by Gibson." Gibson rejected Farmers' $250,000 settlement offer and withdrew his own settlement offer, advising that he would now seek $2 million in damages.

Before trial, Longoria's personal counsel reopened settlement negotiations. Gibson again agreed to settle for $350,000. After Farmers again refused to contribute more than $250,000,

Longoria offered to pay the additional $100,000 without waiving her right to seek recovery of that payment from Farmers. Gibson accepted and gave Longoria a release in exchange for Farmers' and Longoria's payments.

Longoria then filed this suit against Farmers for negligent failure to settle, asserting that Farmers "failed to act as a reasonably prudent insurer" and as a result she had to pay $100,000 of her own funds to secure a release from Gibson. Farmers responded with a motion to dismiss under Texas Rule of Civil Procedure 91a on the ground that Longoria's claim had no basis in law. Farmers argued that Texas law does not recognize a cause of action for negligent failure to settle—a *Stowers* claim—when there has not been a judgment against the insured exceeding policy limits.

Longoria amended her petition to add claims for breach of contract, alleging that Farmers breached the policy by: failing to defend the suit by timely designating expert witnesses, failing to accept an offer to settle within policy limits, failing to use its coverage to secure a release, withholding $100,000 in coverage that it had a duty to pay, and demanding that Longoria contribute personal funds to settle a potential claim of gross negligence that had not been raised. Farmers filed another motion to dismiss, asserting that Longoria had no cause of action for breach of contract for the following reasons: Farmers had no contractual duty to pay damages because Longoria had not been held legally responsible for any damages, Farmers had a right under the policy to settle or defend "as we consider appropriate," and its only duty to settle was the extra-contractual *Stowers* duty. The trial court denied both motions to dismiss.

Farmers sought mandamus relief in the court of appeals, arguing that the trial court abused its discretion by denying the motions to dismiss. 604 S.W.3d 421 (Tex. App.—San

3

Antonio 2019). The court of appeals agreed as to Longoria's claim for breach of contract. *Id.* at 428. Regarding Longoria's allegation that Farmers failed to timely designate experts, the court reasoned that it had had no basis in fact because she did not allege any damages as a result of the alleged breach. *Id.* at 427. Turning to Longoria's allegation regarding Farmers' failure to pay the settlement, the court concluded it had no basis in law because Farmers fulfilled its contractual obligation to "settle or defend" by electing to settle. *Id.*

A majority of the court of appeals held, however, that the trial court properly denied Farmers' motion to dismiss Longoria's claim for negligent failure to settle. *Id*. at 429. Farmers argued that Longoria could not assert a *Stowers* claim absent a judgment in excess of policy limits. But the majority held that whether a *Stowers* claim always required an excess judgment was not so clearly established as to be free from doubt. *Id*. at 428.

Both Farmers and Longoria seek mandamus relief in this Court. The parties disagree regarding whether Longoria's claims for negligent failure to settle and breach of contract have a basis in law.

## ANALYSIS

We explained over 25 years ago that it is "troubl[ing] for obvious reasons" when a liability insurer "solicit[s] a contribution to [a] settlement from its insured without committing its own policy limits." *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 850 n.15 (Tex. 1994). Early in the last century, "the first qualifications to what had been unlimited insurer discretion to settle tort litigation came in situations where the insurance company bargained strategically with its insured . . . [,] us[ing] the risk of excess liability to coerce [the] insured to contribute to a

4

settlement within the [policy] limits and below the expected [amount of a] judgment [against the insured]." Kent D. Syverud, *The Duty to Settle*, 76 VA. L. REV. 1113, 1153 (1990).

As courts recognized various legal theories to limit this strategic behavior, many insurance companies "chose[] simply to get out of the game [of suggesting contributions by their insureds] altogether," *id*. at 1156, but Longoria alleges that Farmers engaged in such behavior here. In reviewing Farmers' Rule 91a motion to dismiss, we must decide whether this alleged behavior fits into certain of the modern doctrinal pigeonholes of Texas insurance law: specifically, whether an insured who contributes to a within-limits settlement in response to a solicitation or demand by her insurer can bring a claim for reimbursement under *Stowers* or the insurance policy.

## I.      Standard of review

Under Rule 91a, a party may move for dismissal on the ground that a cause of action has no basis in law. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1. In ruling on a Rule 91a motion to dismiss, a court may not consider evidence but "must decide the motion based solely on the pleading of the cause of action, together with any [permitted] pleading exhibits." TEX. R. CIV. P. 91a.6. We review the merits of a Rule 91a ruling de novo; whether a defendant is entitled to dismissal under the facts alleged is a legal question. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam). Mandamus relief is appropriate when the trial court abuses its discretion in denying a Rule 91a motion to dismiss. *See In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014).

**II.     Longoria has no *Stowers* claim against Farmers for negligent failure to settle because her liability did not exceed policy limits.**

Longoria's first claim against Farmers is a *Stowers* action for negligent failure to settle, and she contends that Farmers failed to act as a reasonably prudent insurer would have done. In particular, she alleges that Farmers owed her a duty to accept a reasonable settlement offer within policy limits, that Gibson's offer to settle for $350,000 was reasonable especially considering Farmers' failure to designate an expert, and that Farmers' failure to pay that amount in full was a breach of its duty. Farmers moved to dismiss this claim, arguing that a cause of action for negligent failure to settle exists only if the insurer's failure results in a judgment against the insured in excess of policy limits, which did not occur here.

Under the *Stowers* doctrine, an insurer has a common-law duty to settle third-party claims against its insureds when it is reasonably prudent to do so. *Phillips v. Bramlett*, 288 S.W.3d 876, 879 (Tex. 2009) (citing *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved)). The duty arises when (1) the third party's claim against the insured is within the scope of coverage; (2) the settlement demand is within policy limits; and (3) the terms of the demand are "such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." *Id.* (citing *Garcia*, 876 S.W.2d at 849).

When these conditions are met and "the insurer's negligent failure to settle results in an *excess judgment against the insured*, the insurer is liable under the *Stowers* Doctrine for the entire amount of the judgment, including that part exceeding the insured's policy limits." *Id.* (emphasis added) (citing *G.A. Stowers Furniture Co.*, 15 S.W.2d at 548). We have consistently recognized the requirement that an insured be liable in excess of policy limits—whether as a

6

result of judgment or settlement—in order to bring a *Stowers* claim. *See, e.g.*, *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 481 (Tex. 1992) (allowing excess insurance carrier to assert *Stowers* claim against primary carrier where insured's liability was result of settlement); *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 829 (Tex. 1990) (noting that the injury-producing event in determining when a *Stowers* claim accrues is the "underlying judgment *in excess of policy limits*") (emphasis added).

We decline to extend *Stowers* to cases in which there is no liability in excess of policy limits. We explained in *Stowers* that an insurer, when defending its insured, acts as the insured's agent and is bound to exercise ordinary care to protect the insured's interests. 15 S.W.2d at 547. But in cases where there is a substantial risk that the insured's liability will exceed policy limits, a conflict may arise between the insurer and the insured. *Phillips*, 288 S.W.3d at 881; s*ee Canal Ins. Co.*, 843 S.W.2d at 484 (opinion of Doggett, J.) (noting that the varying interests of the insured and the insurer can produce "complex and often conflicting relationships"). In such cases, an insurer may refrain from accepting a reasonable settlement offer under the assumption that any adverse judgment will exhaust policy limits and expose only the insured's money to risk. *Phillips*, 288 S.W.3d at 881.

Permitting a *Stowers* cause of action eliminates this potential conflict, encouraging prompt and reasonable settlements. *Id.* But we see no reason to extend *Stowers* to impose potential extra-contractual damages on an insurer in cases where an insured has no liability in excess of policy limits. *See Garcia*, 876 S.W.2d at 849 (describing the *Stowers* remedy as "shifting the risk of an excess judgment onto the insurer"). In such cases, the contract between the insured and insurer sets out the carrier's obligations and protects the insured. *See*

7

RESTATEMENT OF THE LAW OF LIABILITY INSURANCE § 24 cmt. b (2019) (explaining that insurer's contractual liability for damages within policy limits provides incentive for insurer to make reasonable settlement decisions).

Longoria points out that an excess *judgment* is not a necessary element of a *Stowers* claim, as we allowed recovery based on an excess settlement in *Canal*. *See Canal*, 843 S.W.2d 480. But *Canal* does not undermine the principle that *liability* in excess of policy limits is necessary. In that case, General Rent–A–Car was sued after a tire blew out on one of its cars. *Id.* at 481. General was insured by three insurers: Canal provided primary coverage up to $100,000, and First State and American Centennial provided excess coverage. *Id.* Canal investigated and defended the suit, and the carriers eventually settled for $3.7 million. *Id.* The excess carriers sued Canal, alleging that it mishandled the claim. *Id.* We considered whether an excess carrier was equitably subrogated to its insured's rights against a primary carrier for negligently settling the claim. *Id.* at 482. We held that an excess carrier did have such equitable subrogation rights, permitting that carrier to maintain the insured's cause of action against the primary carrier. *Id.* at 485 (Hecht, J., concurring).[1] We noted that "[i]f the excess carrier had no remedy, the primary insurer would have less incentive to settle within the policy limits." *Id.* at 483 (Opinion of Doggett, J.).

Our holding in *Canal*—that an excess carrier may sue a primary carrier that negligently settles for more than policy limits—is consistent with *Stowers*' goal of encouraging prompt and reasonable settlements within policy limits. *See Phillips*, 288 S.W.3d at 881. When a claim

---

[1] Then-Justice Hecht's concurring opinion in *Canal* provides the majority rationale for our decision because it received five votes, while Justice Doggett's opinion received four votes. *See* 843 S.W.2d at 485.

settles within policy limits, however, *Stowers* liability is not needed to resolve a conflict between insured and insurer. The insurance contract fully addresses the parties' common-law obligations in that circumstance.

In sum, our precedent has consistently recognized a *Stowers* cause of action only when the insured's liability exceeds policy limits. Longoria's claim for Farmers' negligent failure to settle within policy limits has no basis in law because her "allegations, taken as true, . . . do not entitle [her] to the relief sought" under *Stowers*. *See* TEX. R. CIV. P. 91a.1. We hold the trial court abused its discretion by denying Farmers' motion to dismiss that claim.

### III. Longoria has not alleged a viable claim for breach of Farmers' contractual obligation to defend, but she has alleged a breach of its indemnity obligation.

Turning to the insurance policy, Longoria alleges two principal breaches by Farmers: (1) Farmers breached its obligation to defend Longoria against Gibson's suit by failing to designate expert witnesses on time; and (2) Farmers breached its obligation to pay a settlement within policy limits when it chose to settle without exhausting coverage or securing a release for Longoria, demanding instead that she contribute personal funds to the settlement because she was potentially liable for an uncovered claim. Longoria seeks the same damages for both breaches: reimbursement of the $100,000 she contributed to the settlement, which she characterizes as "withheld coverage."

In its motion to dismiss, Farmers contended that Longoria's claims for breach of contract have no basis in law given the following policy language:

> We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. . . . We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. . . . Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

9

Farmers advances several arguments in support of this position, and we consider those arguments as they apply to each of the alleged breaches.[2]

### A. Breach of obligation to defend the suit

We begin with Longoria's allegation that Farmers breached its obligation to defend her. Farmers responds that the policy gave it the right to defend "as we consider appropriate," and it points to the lack of any allegation that it failed to defend Longoria as it considered appropriate.

The contractual right of an insurer to conduct the required defense includes the authority to select an attorney and "make other decisions that would normally be vested in the insured as the named party in the case." *North Cty. Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685, 688 (Tex. 2004). This contractual right of control means that an insured generally cannot second-guess the insurer's decisions. *Id.* at 689. But we have also held that the right is not absolute, and we have recognized standards for determining whether the obligation to defend has been breached. *Id.* ("Under certain circumstances, however, an insurer may not insist upon its contractual right to control the defense."). In *Davalos*, we provided several examples of how an insurer can breach its duty to defend, thereby allowing the insured to refuse the insurer's offered defense and seek damages. 140 S.W.3d at 689 (citing 1 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 4.25 at 393 (4th ed. 2001)).

Longoria has not shown that the defensive defect she alleges here falls within any of the circumstances we identified as actionable in *Davalos*. Longoria seeks to hold Farmers liable because the attorney it provided for her failed to secure and timely designate experts to testify in

---

[2] Longoria quoted this policy language in her petition, so the trial court could consider it in ruling on Farmers' Rule 91a motion.

10

her favor on the issues of causation and amount of damages. We have held, however, that ordinarily "a liability insurer is not vicariously responsible for the conduct of an independent attorney it selects to defend an insured." *State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 628 (Tex. 1998). Longoria identifies no pleaded facts that would take her claim outside this legal rule. Longoria's claim that Farmers breached the policy based on counsel's conduct therefore has no basis in law.

### B. Breach of indemnity obligation

Longoria also alleges that Farmers breached its contractual obligations regarding indemnity and settlement. Some of her allegations echo her *Stowers* claim: Farmers failed to accept an offer to settle within policy limits, subjecting her to the risk of an excess verdict. But other allegations focus on Farmers withholding payment for a covered loss: Farmers failed to use its coverage to secure a release, withheld $100,000 in coverage that it had a duty to pay, and demanded that Longoria contribute personal funds to settle a potential claim of gross negligence that had not been raised.

The latter allegations implicate Farmers' indemnity obligation: its contractual promise to pay damages for which Longoria becomes legally responsible. Considering solely Longoria's petition and Texas law, as we must under Rule 91a, we conclude that Longoria may pursue a claim for breach of Farmers' duty to indemnify.

#### 1. The policy's indemnity provision

"An insurance policy is a contract that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed," and we generally "construe a policy using the same rules that govern the construction of any other contract." *USAA Tex. Lloyds Co.*

11

*v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018) (cleaned up). "In liability insurance policies generally, an insurer assumes . . . the duty to indemnify the insured, that is, to pay all covered claims and judgments against an insured . . . subject to the terms of the policy." *D.R. Horton– Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009) (cleaned up).[3] According to Longoria's petition, the policy provides that Farmers "will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident."

Longoria has alleged that she is a covered person, and that she and Farmers paid an amount within Farmers' limit of liability to settle Gibson's claims of bodily injury and property damage because of an auto accident. Farmers argues it did not breach its obligation to pay the remainder, however, because no court has determined that Longoria was "legally responsible" for the $100,000 she contributed to the settlement. Gibson's suit against Longoria settled before trial, this argument runs, so she will never become legally responsible for damages and therefore cannot maintain a claim against Farmers for breach of contract. We disagree. Because Texas courts recognize that an insured can become legally responsible due to a settlement, Longoria has alleged facts that trigger Farmers' payment obligation under the plain language of this policy provision.

---

[3] *See also* 2 WINDT, INSURANCE CLAIMS & DISPUTES § 6:1 ("The most fundamental of an insurer's obligations under an insurance contract is its duty to indemnify—its duty, depending on the type of policy, either to reimburse the insured for losses incurred directly by the insured or to pay sums that the insured becomes legally obligated to pay to others.").

"A court judgment against an insured is not the only manner by which an insured can become legally obligated to pay a claim; a legal obligation can also arise out of a contract, such as a settlement." 46 TEX. JUR. 3D INSURANCE CONTRACTS & COVERAGE § 893.[4]  For example, we have held that an excess insurer was obligated to indemnify an insured for liability established by settlement. *Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660, 675 (Tex. 2008) (holding ATOFINA was an insured under the policy and therefore entitled to coverage for its contribution to settlement).  And Texas courts of appeals have construed similar policy language "to provide unambiguously that the duty to indemnify arises only after an insured's legal responsibility for covered damages has been established by judgment *or settlement*.  [This] conclusion finds ample support in our State's jurisprudence and other authorities." *Ohio Cas. Ins. Co. v. Time Warner Entm't Co., L.P.*, 244 S.W.3d 885, 890 (Tex. App.—Dallas 2008, pet. denied) (emphasis added);[5] *see* 2 ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES § 6:6 ("Third-party liability policies require, as a condition precedent to the insurer's liability, that the insured be liable to a third person, by means of either a judgment or a settlement.").  A contrary rule that insists on a judgment before indemnity can be sought "would

---

[4] *See also* THE CLAIM ADJUSTER'S AUTOMOBILE LIABILITY HANDBOOK § 2:1 ("The duty to indemnify is determined by the facts that are established at trial or that are finally determined by some other means, for example, through discovery during the litigation, through summary judgment, or settlement.").  Of course, other policy provisions may require the insurer's consent to the settlement for coverage to apply, but there is no dispute here that Farmers consented to the settlement.

[5] *See also Archon Invs., Inc. v. Great Am. Lloyds Ins. Co.*, 174 S.W.3d 334, 339 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("[T]he duty to indemnify . . . arises only after the insured has been adjudicated legally responsible for damages in a lawsuit by judgment or settlement."); *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 190 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (same); *Collier v. Allstate Cty. Mut. Ins. Co.*, 64 S.W.3d 54, 62 (Tex. App.—Fort Worth 2001, no pet.) (same); *Reser v. State Farm Fire & Cas. Co.*, 981 S.W.2d 260, 263 (Tex. App.—San Antonio 1998, no pet.) (same).

13

contravene the policy of the courts to encourage settlements and to minimize litigation." *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799 (Tex. 1992).[6]

Here, Longoria's petition attaches the agreement settling Gibson's suit. The agreement provided that Gibson released Longoria for consideration of $350,000: $250,000 to be paid by Farmers and $100,000 to be paid by Longoria. This settlement establishes that Longoria was "legally responsible" for damages because of the auto accident with Gibson. *See Ohio Cas. Ins. Co.*, 244 S.W.3d at 890. Moreover, Farmers participated in the settlement, tendering $250,000 in payment of its portion of Gibson's claim and thereby preventing a determination of liability at trial. It would be strange indeed if Farmers' participation had the effect of relieving it of any obligation under the policy to pay Gibson.

Farmers points out that a different policy clause gave it the right to "settle . . . as it considers appropriate." Longoria's petition appears to allege that Farmers also breached this clause by failing to accept an offer to settle within policy limits. We agree with Farmers that this part of her claim for breach of contract has no basis in law. Farmers concluded it was appropriate here to structure a settlement under which both it and Longoria contributed funds to obtain a release. *See* 14A COUCH ON INSURANCE § 203:30 ("[A]n insurer can and should condition settlement upon the injured party releasing the insured."). But Longoria can assert—and has asserted—a claim against Farmers for breaching its separate promise to pay the damages for which this settlement made her legally responsible.

---

[6] The dissent suggests that this rule should apply to settlements only if the insured admits to facts that would establish fault in the settlement agreement. *Post* at __. But it identifies no authority supporting that view, and we have found none.

14

### 2. Other issues that may affect Longoria's claim

Our conclusion that Longoria has alleged facts meeting the elements stated in her policy's indemnity provision does not mean she will succeed in proving that Farmers is liable for breach of the policy. Because this case comes to us on a Rule 91a motion, we may not consider evidence regarding what Farmers' reasons were for non-payment or whether those reasons implicate other policy provisions or legal doctrines that would prevent any liability for breach.[7] TEX. R. CIV. P. 91a.6. The entire policy is not before us because it was neither quoted in Longoria's petition nor attached as an exhibit. *Id.* On remand, Farmers is free to offer evidence that it did not breach the policy.

More generally, we do not hold that insureds who settle third-party claims unilaterally—without the consent or participation of their insurers—are entitled to reimbursement under their policies. The indemnity provision is only one part of a liability insurance policy, and there are other legal grounds that may prevent an insurer from being obligated to pay a settlement.[8]

For example, Longoria pleads some facts suggesting that Farmers decided not to pay the entire settlement because it concluded part of Gibson's suit was not covered by the policy. She alleges that a reason Farmers gave for soliciting her personal contribution to the settlement was that she had "created potential liability for gross negligence"; she also alleges that Gibson had not asserted a claim for gross negligence. Farmers does not address these allegations or take a position on what Gibson pled or whether its policy would cover liability for gross negligence. If

---

[7] In any event, the record is unsurprisingly unclear on these matters at this early stage of the litigation.

[8] We have recognized that reimbursement may be required in the event of a prior material breach by the insurer, such as a wrongful refusal to defend or denial of coverage. *E.g.*, *Evanston Ins. Co.*, 256 S.W.3d at 670–74; *Emp'rs Cas. Co. v. Block*, 744 S.W.2d 940, 943 (Tex. 1988).

a policy does not provide coverage for a claim made against an insured, the insurer has no duty to indemnify regarding that claim. *See, e.g.*, *Mid–Continent Cas. Co. v. Castagna*, 410 S.W.3d 445, 450 (Tex. App.—Dallas 2013, pet. denied). On the other hand, if the insurer wrongly denies coverage, the insured is entitled under the policy to have the insurer pay the amount for which she is legally responsible.[9]

These rules continue to apply when, as here, a suit is settled before the coverage dispute is resolved. If a liability insurer disputes whether some claims asserted against its insured are covered, it may comply with its policy obligations by defending under a reservation of rights, and it may settle the entire suit and—with the insured's consent—reserve for separate litigation the question whether the insured should reimburse it for part of the settlement. *E.g.*, *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 43 (Tex. 2008); *Tex. Ass'n of Counties Cty. Gov't Risk Mgmt. Pool v. Matagorda Cty.*, 52 S.W.3d 128, 135 (Tex. 2000). This approach also works the other way: if an insurer agrees to settle some claims but refuses to cover others, the insured may join with it to settle the entire suit and reserve for separate litigation the question whether the insurer should reimburse it for the remainder of the settlement. *See* 2 WINDT, INSURANCE CLAIMS & DISPUTES § 6:31 ("Coverage questions [can] arise . . . when an insured pays all or part of a settlement and then seeks reimbursement from the insurer.").[10] In that separate litigation for breach of the indemnity obligation, the insured must prove that the refused claims were in fact covered. *See Seger v.*

---

[9] *See Evanston Ins. Co.*, 256 S.W.3d at 671–74; 1 WINDT, INSURANCE CLAIMS & DISPUTES § 5:1 ("[A]ssuming that there is coverage for all the claims made against the insured, the insurer should not request the insured to contribute to a settlement for an amount within the policy limits . . . .").

[10] The terms of any agreement between the insured and the insurer may shed light on whether this question is being reserved or compromised.

*Yorkshire Ins. Co.*, 503 S.W.3d 388, 400 (Tex. 2016) (discussing insured's burden in proving coverage).[11]

If the claims against the insured are covered, there are other questions that may need to be answered before an insurer can be held liable to indemnify the insured for a settlement. Many policies include provisions that give the insurer exclusive control over settlement, allowing it to refuse indemnity for an insured's unilateral settlement or decline to join with its insured in settling a claim, choosing instead to go to trial.[12] Farmers does not suggest that Longoria breached such a provision here—and for good reason. Accepting Longoria's allegations as true, Farmers exercised its prerogative to settle, paid the settlement in part, and either demanded or suggested that Longoria pay the remainder in order to obtain a release. Having solicited Longoria's contribution, Farmers can hardly contend that it was unauthorized. In short, Farmers structured a within-limits settlement but did not pay it fully, giving rise to a claim whether its consent to settle contingent on the insured's payment breached its duty to indemnify her.

An insurer also will not be obligated to indemnify its insured for a settlement that is collusive or unreasonable in amount. *See E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 259 S.W.3d 800, 810 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (party seeking indemnity must show "that the settlement was reasonable, prudent, and made in good faith under the circumstances"); *Tex. United Ins. Co. v. Burt Ford Enters.*, 703 S.W.2d 828, 835 (Tex. App.— Tyler 1986, no writ). When a plaintiff and a defendant-insured reach an agreement that compromises the insured's incentive to "ensure that the judgment or settlement accurately

---

[11] We do not hold that Longoria could use the policy to insist that Farmers settle an uncovered claim.

[12] *See Traver*, 980 S.W.2d at 627; 1 WINDT, INSURANCE CLAIMS & DISPUTES § 3:9 & n.2.

17

reflects the plaintiff's damages and thus the . . . covered liability loss," the insurer will not be bound to the amount. *Great Am. Ins. Co. v. Hamel*, 525 S.W.3d 655, 666 (Tex. 2017). This concern does not appear to be present here, however, as Longoria paid part of the settlement out of her own pocket. In addition, an insured generally must show that the settlement amount "is one that a reasonable person who bears the sole financial responsibility for the full amount of the potential covered judgment would [pay]." RESTATEMENT OF THE LAW OF LIABILITY INSURANCE § 27(2)(d).[13] If Farmers contends that Longoria should not receive full reimbursement because she paid an unreasonable amount to settle the remainder of the suit, the parties may introduce evidence on that issue in the trial court.[14]

### 3. *Stowers* does not eliminate the duty to indemnify

Farmers also asks us to hold that an insured's only avenue to sue an insurer for mishandling a third-party claim is under the *Stowers* doctrine, and therefore Longoria cannot sue for breach of contract. As support for this position, Farmers relies on our decision in *Maryland Insurance Co. v. Head Industries Coatings & Services, Inc.*, 938 S.W.2d 27 (Tex. 1996). We disagree with Farmers' reading of *Head*.

---

[13] *See also* 14A COUCH ON INSURANCE § 203:43 (listing factors relevant to reasonableness of settlement); Kenneth S. Abraham, *The Liability Insurer's Duty to Settle Uncertain and Mixed Claims*, 68 RUTGERS U.L. REV. 337, 361 (2015) (insured must prove "that the amount of the settlement was reasonable in light of the probability that the claim against the insured would succeed and the amount of likely damages"); Syverud, *The Duty to Settle*, 76 VA. L. REV. at 1124–25. In some circumstances, such as when an insurer wrongly denies coverage, we have held that the insurer may not challenge the reasonableness of the insured's settlement. *Evanston Ins. Co.*, 256 S.W.3d 671–74. The parties have not addressed whether such a circumstance is applicable here, and we express no view on that issue.

[14] The dissent points out that Farmers made the decision to pay no more than $250,000 to settle, but the petition does not reveal whether Farmers reached that decision by valuing all claims or only the claims it thought were covered. Thus, it is unclear whether Farmers regards Longoria's payment of an additional $100,000 as unreasonable if all claims are determined to be covered.

At issue in *Head* was whether to recognize a cause of action against an insurer for breach of a common-law duty of good faith and fair dealing when the insurer denied coverage and refused to defend its insured against a third-party claim. *Id.* at 28. We declined to recognize the cause of action, holding that "Texas law recognizes only one *tort* duty in this context, that being the duty stated in *Stowers*." *Id.* at 28 (emphasis added). We reversed the court of appeals' contrary judgment, explaining that the court had "overlooked the fact that an insured is fully protected against his insurer's refusal to defend or mishandling of a third-party claim by his *contractual* and *Stowers* rights." *Id.* at 28–29 (emphasis added).

Farmers contends that our recognition of contractual rights in *Head* does not extend to mishandling a claim because the insurer in that case wholly refused to defend. We disagree. The issue presented by Farmers' motion to dismiss is whether Texas law recognizes a cause of action for breach of an insurer's contractual obligation to indemnify when the insurer opts to settle a third-party claim against its insured by paying an amount less than policy limits and requires the insured to contribute in order to obtain a release. Our decision in *Head* acknowledges that Longoria is protected from Farmers' alleged mishandling of the claim by her contract rights, and no court has held that a claim for breach of contract is unavailable. We specifically declined in *Head* to recognize any *tort* cause of action for mishandling a claim (other than *Stowers*), *id.* at 28, but we did not determine that a claim for breach of contract is precluded by *Stowers* or any other Texas law.[15]

---

[15] Although *Head* declined to recognize a common-law cause of action for breach of a duty of good faith and fair dealing, the Legislature has created certain "bad faith" claims by statute. One such claim is for an insurer's failure to attempt in good faith to settle when liability has become reasonably clear. TEX. INS. CODE § 541.060(a)(2)(A); *see Rocor Int'l v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 260–62 (Tex. 2002) (looking to *Stowers* principles in deciding when liability is reasonably clear). Longoria has not alleged a statutory claim here.

19

Further, Longoria is not protected by *Stowers* because we hold above that a *Stowers* claim is not permitted when—as here—there is no excess liability against the insured.[16] Permitting a claim for breach of contract for failure to indemnify under these circumstances is not inconsistent with *Stowers*. *See Garcia*, 876 S.W.2d at 846 (discussing different sources of duty to indemnify and *Stowers* duty to accept reasonable settlement demands within policy limits).

As we have explained, a *Stowers* claim sounds in tort. *See Head*, 938 S.W.2d at 28; *Hernandez v. Great Am. Ins. Co. of New York*, 464 S.W.2d 91, 94 (Tex. 1971). Resort to tort principles is necessary when an insured seeks to recover damages from an insurer that exceed the contractually agreed limits on its liability. *See Stowers*, 15 S.W.2d at 547. Tort principles are not necessary, however, to provide the insured a remedy for damages *within* policy limits. Rather, the contract itself requires an insurer to pay such damages for a covered claim. *See Henson v. S. Farm Bureau Cas. Ins. Co.*, 17 S.W.3d 652, 653 (Tex. 2000) (holding that insured and insurer were contracting parties and their duties were established by contract, including duty of insurer to pay to extent of policy limits); RESTATEMENT OF THE LAW OF LIABILITY INSURANCE § 27 note b (collecting "authority supporting the insured's ability to recover for a within-limits

---

[16] And even if the case had not settled and the eventual judgment on the $2 million claim had exceeded Longoria's $500,000 policy limits, Longoria was not certain to recover the amount of the excess judgment under *Stowers*. Rather, she would need to prove that an ordinarily prudent insurer with the information available at the time would have accepted the offer to settle within policy limits "considering the likelihood and degree of the insured's potential exposure to an excess judgment." *Garcia*, 876 S.W.2d at 849; *see, e.g.*, *Am. Guar. & Liab. Ins. Co. v. ACE Am. Ins. Co.*, 413 F. Supp. 3d 583, 597 (S.D. Tex. 2019) (holding insurer did not breach its *Stowers* duty by rejecting $2 million settlement offer where eventual judgment was over $27 million because "a reasonable insurer could still have been confident in a defense verdict" at that time). In addition, Longoria alleges that Farmers injected the issue of gross negligence into the case even though the plaintiff suing her had not pled it, which raised the possibility that part of the judgment would not be covered. *See Garcia*, 876 S.W.2d at 848 ("[A]n insurer has no duty to settle a claim that is not covered under its policy."). Faced with an insurance company that was allegedly working against her, Longoria had every incentive to limit her exposure as much as possible.

settlement entered into to avoid an excess verdict"). As in this case, many insuring agreements state that the insurer's duty regarding settlement ends when its coverage has been exhausted, *i.e.*, the policy limits on its liability have been reached.[17] *Stowers* does not preclude a claim against the insurer for breach of contract when the insured alleges that she suffered damages within policy limits.

### 4. Response to the dissent

Our dissenting colleagues contend that Longoria has no claim for breach of contract because an insurer only has a duty to indemnify based on a settlement when the insured admits to facts establishing her legal responsibility for an accident. *Post* at __. Although the dissent does an admirable job of writing the motion for summary judgment that Farmers could have filed, Farmers does not make this argument, and Longoria has not had an opportunity to respond to it.[18] Rather, as explained above, Farmers chose to file a motion to dismiss under Rule 91a, arguing that it had no contractual duty to indemnify because there had not been a trial, so there would never be a determination that Longoria was "legally obligated" to pay any damages. As we have already explained, Farmers' argument that the settlement did not legally obligate Longoria to pay damages is incorrect.

We do not disagree with the dissent's point that the duty to indemnify "depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by

---

[17] This issue often arises in cases involving excess insurers. Courts have held that a primary insurer's coverage is not exhausted by a within-limits settlement. *See, e.g.*, *Citigroup, Inc. v. Federal Ins. Co.*, 649 F.3d 367, 372 (5th Cir. 2011). The Fifth Circuit held that an excess insurance policy was never triggered because the within-limits settlement did not exhaust the underlying insurance policy.

[18] *See Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 782 (Tex. 2020) ("Our adversary system of justice generally depends 'on the parties to frame the issues for decision and assign[s] to courts the role of neutral arbiter of matters the parties present.'" (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008))).

21

the terms of the policy." *D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009). But those facts are not required to be proven in an underlying trial against the insured and are often proven in coverage litigation. *Id.* "This is especially true when the underlying liability dispute is resolved before a trial on the merits and there was no opportunity to develop the evidence," as was the case in *D.R. Horton* and is the case here. *See id.* The dissent faults us for not explaining *when* a settlement triggers an insurer's duty to indemnify. But as with the duty to indemnify generally, that will depend on the evidence—which we do not have at this early stage of the case.

Finally, citing the policy's "no legal action" clause, the dissent contends that because Longoria did not specifically allege a writing in which Farmers agreed she had an obligation to pay Gibson, she may not bring an action against Farmers. *Post* at __. Farmers did not brief this argument either, perhaps because it recognized that the policy containing this clause was not attached as a pleading exhibit. Therefore, we may not consider the clause in reviewing this Rule 91a motion. *See* Tex. R. Civ. P. 91a.6 (providing that in considering a Rule 91a motion, a court may not consider evidence and "must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits"). As explained in Part III.B.2. above, Farmers may offer evidence on remand regarding this clause and its application to this case, and Longoria will have an opportunity to respond.[19]

\* \* \*

---

[19] In any event, the facts alleged by Longoria and inferences drawn therefrom do not conclusively establish that the "no legal action" clause applies and that it was not satisfied. Longoria alleged that Farmers participated in a settlement within its policy limits, wrote Gibson to remit two-thirds of the settlement amount, and conditioned a release on Longoria's payment of the remainder. As we have explained, Farmers' alleged role in the settlement precludes dismissal at this early stage on the ground that it had no duty to indemnify as a matter of law.

We do not determine today what the policy as a whole required, whether Farmers breached it by consenting to settle within policy limits but making the insured's release contingent on her contribution, or whether Longoria can prove damages. Rather, our holding is limited to the scope of Farmers' Rule 91a motion and clarifies a narrow issue: *Stowers* and the other principles of Texas insurance law cited by Farmers do not foreclose as a matter of law a claim for breach of contract against an insurer regarding its indemnity obligation. Thus, the trial court properly denied Farmers' Rule 91a motion to dismiss Longoria's cause of action for breach of the contractual obligation to indemnify, and the court of appeals erred in concluding otherwise.

## CONCLUSION

We conditionally grant mandamus relief to Farmers because the trial court abused its discretion in denying Farmers' Rule 91a motion to dismiss Longoria's *Stowers* claim for negligent failure to settle. We direct the trial court to grant Farmers' motion in part and dismiss that claim, and our writ will issue only if the trial court fails to act in accordance with this opinion. We also conditionally grant mandamus relief to Longoria in part, holding that the court of appeals erred in ordering the trial court to dismiss her claim for breach of the contractual obligation to indemnify. That claim may proceed in the trial court.

_____

J. Brett Busby
Justice

**OPINION DELIVERED:** April 23, 2021